UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) Case No. 1:09-CV-5644 |
| Plaintiff, | )<br>) Judge Joan B. Gottschall |
| v. | ) |
| ROBERT D. FALOR, | ) |
| Defendant, | ) |
| and | ) |
| JENNIFER L. FALOR, | ) |
| Relief Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Securities and Exchange Commission (the "SEC"), brought this action against Defendant Robert Falor, seeking injunctive relief, civil penalties, disgorgement, and prejudgment interest for alleged violations of the Securities Act and the Securities Exchange Act. (Compl., Doc. No. 1.) This matter comes before the court on Falor's motion to dismiss.[1] (Doc. No. 23.)

### I. BACKGROUND

Between July 2004 and April 2005, Falor allegedly sold $9 million worth of "membership interests" in three LLCs: Printers Row Investors, LLC; South Beach Investors, LLC; and Tides Hotel Investors, LLC. (Compl. ¶ 2.) Falor represented to investors that their

---

[1] The SEC also seeks disgorgement of ill-gotten gains from Relief Defendant Jennifer Falor, Falor's ex-wife. (Compl.) Ms. Falor does not join her former husband in his motion to dismiss, and has filed an answer to the SEC's complaint. (Answer, Doc. No. 22.)

funds "would be used to buy old hotels, convert them to hotel-condominium units and to sell the hotel-condominium units at a profit, and to then pay promised returns ranging from 50% to 120% over a two-year period." (*Id.* ¶ 3.) According to the SEC, however, "Falor used investor funds to make payments to himself and [his wife], to buy expensive cars, to lease private airplanes, to finance other unrelated real estate projects, and to pay unrelated business debts." (*Id.* ¶ 4.) In an attempt to conceal his fraud, the SEC claims that "Falor provided investors with false information concerning the progress of the hotel-condominium conversion projects." (*Id.* ¶ 5.) After "several years of mismanagement," the hotels were sold at a loss, and Falor allegedly pocketed the proceeds from those sales. (*Id.* ¶¶ 30, 47, 63.) The SEC subsequently filed a three-count complaint against Falor, alleging violations of Sections 17(a)(1), (2), and (3) of the Securities Act and Section 10(b) of the Exchange Act. (*Id.* ¶¶ 64-74.) *See* 15 U.S.C.A. §§ 77q(a)(1-3), 78j(b).

## II. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009).

## III. ANALYSIS

### A. Misstatements

Falor argues that "Plaintiff's complaint fails to provide the requisite specificity that any representations were false or misleading." (Mot. at 3-4.) The SEC asserts that "the Complaint provides, on a transaction-by-transaction basis, a detailed account of Defendant['s] scheme to divert investor funds from the conversion projects . . . for his illicit personal use." (Resp. at 9.) The court agrees with the SEC.

Under Federal Rule of Civil Procedure 9(b), litigants (including the SEC) are required to plead allegations of fraud "with particularity." *See S.E.C. v. Kelly*, 545 F. Supp. 2d 808, 811 (N.D. Ill. 2008) (citing Fed. R. Civ. P. 9(b)). This means that the complaint must allege the "'who, what, when, where, and how' of the fraud." *Id.* (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). In practical effect, Rule 9(b) requires the plaintiff to "'state the time, place and content of the alleged communications perpetrating the fraud,'" such that the court can "evaluate the claim in a meaningful way." *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991)).

The SEC has clearly met its burden of pleading the circumstances of Falor's alleged fraud with particularity. (*See* Compl.) For each of the three LLCs that Falor controlled, the SEC describes the timing and content of Falor's misrepresentations to investors, as well as a transaction-by-transaction account of Falor's misappropriation of investor funds. (*See id.* ¶¶ 13-63.) The SEC's detailed description of how Falor allegedly bilked investors in the Tides Hotel out of $2.8 million provides an example of the level of specificity employed throughout the complaint. (*See id.* ¶¶ 13-30.) First, the SEC alleges that Falor solicited the investors "[i]n the

3

fall of 2004," using "various offering materials" stating that "the investors' funds would be used to purchase the Tides Hotel and convert it to a hotel condominium." (*Id.* ¶ 15.) "Between . . . November 9, 2004 and December 6, 2004, Falor raised approximately $2.8 million from approximately twenty-six investors through the sale of membership interests in Tides Hotel Investors . . . ." (*Id.* ¶ 16.) According to the SEC, the investors' funds were not used to purchase the Tides Hotel, but rather to "make payments to [Falor] and [his wife], to buy expensive cards, to lease private airplanes, to finance other unrelated real estate projects, and to pay unrelated business debts." (*Id.* ¶ 4.) The complaint then sets forth in detail the timing and circumstances of Falor's misappropriations:

- On November 12 and 17, 2004, Falor directed wire transfers of $560,000 and $300,000 of investor funds to his wife, Jennifer Falor; in June 8, 2008, Ms. Falor "used the . . . investor money to make a down payment for the purchase of a multimillion dollar home located in Winnetka, Illinois." (*Id.* ¶¶ 20, 22-23.)

- On December 14, 2004, "Falor directed the wire transfer of $50,000 [of investor funds] to pay a Falor business associate for a business expense unrelated to the Tides Hotel conversion project." (*Id.* ¶ 27.)

- On December 21, 2004, "Falor directed the wire transfer of $192,663.10 [of investor funds] to pay for the lease of private airplanes." (*Id.* ¶ 28.)

The complaint also details the timing and content of misrepresentations that Falor made "to lull [investors] into believing their investments were being used to complete the Tides Hotel conversion project." (*Id.* ¶ 29.) "Between approximately July 15, 2005 and September 26, 2005," alleges the SEC, "Falor, through conference calls and written documents, provided investors with false information concerning the progress of the Tides Hotel conversion and the percentage of hotel-condominium units sold." (*Id.*)

The complaint explains in similar detail how Falor made various misrepresentations to (and misappropriations from) investors in Printers Row Investors, LLC and South Beach

4

Investors, LLC. (*See id.* ¶¶ 31-63.) The SEC has therefore alleged the "who, what, when, where, and how" of Falor's fraud with sufficient particularity to survive a motion to dismiss.[2] *See DiLeo*, 901 F.2d at 627.

**B. Scienter**

Falor argues that the SEC "has failed to plead with sufficient specificity the scienter requirement" of Counts I and III.[3] (Mot. at 5.) Specifically, Falor claims that the complaint fails to establish that his alleged misrepresentations were "knowingly wrongful *when they were made and/or done*." (*Id.* at 4 (emphasis in original).) The SEC counters that "Falor knew at the time that he made these statements that he was not using a large amount of the investor funds for the purchase and renovation of the hotels." (Resp. at 13.) The court agrees with the SEC.

---

[2] Falor complains that "[t]he Complaint contains virtually no reference to any document or person supporting any challenge to statements allegedly made by Falor or to conduct of Falor, let alone any showing that they were fraudulent." (Mot. at 4.) Instead, Falor claims that the SEC "relies in part on unattributed references to another lawsuit," *Voll v. Falor*, No. 1:07-cv-2601 (N.D. Ill. June 5, 2008). (*Id.*) According to Falor, this is impermissible because "Plaintiffs cannot be permitted to free ride off the press or the complaints of other parties . . . , rather they must provide to the court that their complaint is backed by specific facts supporting a 'strong inference of fraud.'" (*Id.* (citing *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1040 n.11 (S.D.N.Y. 1993).) Falor's argument fails. Rule 9(b) does not require plaintiffs to "reference any document or person" evincing the allegedly fraudulent conduct. (*Compare id. with* Fed. R. Civ. P. 9(b).) Rather, it is enough that the plaintiff "'state the time, place and content of the alleged communications perpetrating the fraud.'" *Arazie*, 2 F.3d at 1465 (quoting *Graue Mill Dev. Corp.*, 927 F.2d at 992). To hold otherwise would impose too great a burden on the plaintiff at the pleading stage. Nor does it appear that the SEC "relied" on references to the *Voll* complaint, as Falor claims. (Mot. at 4.) A comparison between the SEC's complaint and Voll's complaint reveals numerous factual differences, the most notable of which is the SEC's detailed account of Falor's misappropriations; Voll apparently did not have access to such information and in any event did not include it in his complaint. (*Compare* Compl. in *Voll v. Falor*, Ex. 2 to Mot., *with* Compl.) The SEC did not therefore get a "free ride" off Voll's suit, and it is clear that it "provide[d] to the court that their complaint is backed by specific facts supporting a 'strong inference of fraud.'" *See Three Crown Ltd. P'ship*, 817 F. Supp. at 1040 n.11. Even if the SEC had piggybacked on Voll's complaint, Falor can hardly complain, since Falor appears to have confessed to a $1,450,000 judgment for "willfully and maliciously caused injury" to Voll. (Confession of Judgment in *Voll v. Falor*, No. 634548 (Ct. of Common Pleas, Cuyahoga Cty., Oh.), Ex. C to Resp.)

[3] Count II is based on sections 17(a)(2) and 17(a)(3) of the Securities Act, neither of which require a showing of scienter. (Compl. ¶¶ 60-70.) *See* 15 U.S.C. § 77q(a)(2), (3); *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 (7th Cir. 1981) (recognizing that "the S.E.C. need not establish scienter as an element of an action to enjoin violations of Section 17(a)(2) and 17(a)(3) of the Securities Act of 1933").

5

"Although state of mind may be pleaded generally under Rule 9(b), the complaint must provide a sufficient factual basis for finding scienter."[4] *S.E.C. v. Sys. Software Assocs., Inc.*, 145 F. Supp. 2d 954, 958 (N.D. Ill. 2001). That said, "[p]leading the who, what, when, where, and how with sufficient particularity to satisfy Rule 9(b) will generally be sufficient to support the scienter requirement." *S.E.C. v. Black*, No. 04 C 7377, 2005 WL 1498893, at *3 (N.D. Ill. June 17, 2005). A defendant has "scienter" if he or she "knew that the representations they made to investors were false or were reckless in disregarding a substantial risk that they were false." *S.E.C. v. Lyttle*, 538 F.3d 601, 603 (7th Cir. 2008) "[A] [knowing] or reckless omission of material facts upon which the plaintiff put justifiable reliance" likewise qualifies as scienter. *Id.* (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1044 (7th Cir. 1977)).

The facts and circumstances set forth in the SEC's complaint provide a "sufficient factual basis" from which to infer scienter. In drawing all reasonable inferences in favor of the SEC, it is fair to assume that the investors were unaware and would not have approved of Falor using their funds "for personal use and to pay unrelated business expenses" instead. (Compl. ¶ 42.) It is equally fair to assume that Falor, a sophisticated businessman and CEO who raised more than $9 million in capital for his hotel conversion project (*see id*. ¶¶ 2, 8), knew that his misappropriations were wrongful (or at least counter to the representations he made while soliciting investors) (*see id.* ¶ 15). Indeed, Falor's guilty knowledge is confirmed by his alleged attempt to "cover-up" the fraud by "providing investors with false information concerning the progress of the hotel-condominium conversion projects." (*Id*. ¶ 5.) Falor argues that the SEC failed to allege that he knew those assurances were false. (*See* Mot. at 6) To the contrary, the SEC expressly alleges that Falor's assurances were designed to "lull [investors] into believing

---

[4] As a government entity, the SEC is not subject to the more stringent pleading standards imposed by PSLRA. *See* 15 U.S.C.A. § 78u-4(b)(2) (imposing heightened pleading standards for scienter on "private action[s]" only).

that their investments were being used to complete the [hotel] conversion project[s]." (Compl. ¶ 29.) It is difficult to imagine that Falor was unaware that his assurances were false since he was the individual who (a) "controlled" the entire hotel conversion project and (b) misappropriated the funds necessary for the project's success. (*See*, *e.g.*, *id.* ¶¶ 1-2, 22-28.)

Falor also argues that his financial projections, which promised investors a return of 50% to 120%, cannot form the basis for a fraud claim because the SEC has failed to "'allege specific facts which illustrate that [Falor's] predictions lack a reasonable basis.'" (Mot. at 6 (citing *In re Healthcare Compare Corp. Secs. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996)).) Drawing all permissible inferences in favor of the SEC, it appears that Falor lacked any reasonable basis to assume that the promised returns would materialize. (*See* Compl.) Falor is alleged to have spent more than half of the investors' funds—$4.6 million of $9 million—for his own personal benefit and the benefit of his wife. (*Id.* ¶¶ 2, 4.) According to the SEC, "Falor's misappropriation of investor funds contributed to the failure of the conversion projects because there were insufficient funds to complete the projects." (*Id.* ¶ 6.) Falor must have been aware (or at least recklessly indifferent to the fact) that the returns he promised would be unlikely to materialize if half the investors' funds were being diverted for his personal use. Falor argues further that his income projections could not have been made with scienter because they "occurred *prior* to the alleged misappropriations." (Reply at 8 (emphasis in original).) But according to the SEC, "Falor misappropriated investors' funds within a few days of the receipt of these funds." (*Id.* ¶ 4) This suggests that Falor had intended from the beginning to subsidize his lavish lifestyle and unrelated business ventures with investor funds. The SEC has therefore pled sufficient facts to support its claim of scienter.

**C. Securities**

Falor argues that the SEC has failed to sufficiently plead that the "membership interests" sold by Falor are "securities." (*See* Mot. at 7.) The SEC urges that "[t]he membership interests in the Investor LLCs are 'investment contracts' and therefore securities" within the meaning of the Securities and Exchange Acts. (Resp. at 14.) The court agrees with the SEC.

In order to be held liable for securities fraud, a defendant's misrepresentations must have been made "in connection with the purchase or sale of any security." *See* 15 U.S.C. §§ 77q(a), 78j(b). The Securities Act of 1933 defines "security" as including "any note, stock, treasury stock, . . . *investment contract*, . . . or, in general, any interest or instrument commonly known as a 'security' . . . ." 15 U.S.C. § 77b(1) (emphasis added). The 1934 Exchange Act contains a "virtually identical" definition of "security." *See* 15 U.S.C. § 78c(a)(10); *Tcherepnin v. Knight*, 389 U.S. 332, 335-36 (1967). The term "investment contract" is a "term of art" in the securities laws. *S.E.C. v. Lauer*, 52 F.3d 667, 670 (7th Cir. 1995). "It means an interest that is not a conventional security like a bond or a share of common stock but that, having the essential properties of a conventional security-being an undivided, passive (that is, not managed by the investor) financial interest in a pool of assets-is treated as one for purposes of these laws." *Id.* (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 690 (1985)).

Taken in the light most favorable to the SEC, the complaint alleges sufficient facts to conclude that the "membership interests" sold by Falor were "investment contracts," and thus securities. (*See* Compl.) According to the complaint, Mr. Falor was selling membership interests in the three separate LLCs, Tides Hotel Investors, LLC, Printers Row Investors, LLC, and South Beach Investors, LLC. (*See id.* ¶¶ 1-2, 13, 31-32, 48-49.) Under each LLC's operating agreement, the designated "managing member" was an entity owned solely by Falor.

8

(*See id.*) Through his ownership of those managing members, Falor "controlled" each of the LLCs. (*See id.*) *See also* 6 Del. Code § 18-402 (providing that "the management of the limited liability company, to the extent so provided, shall be vested in the manager"); 805 ILCS 180/15-1 (b)(2) (providing that "any matter relating to the business of the company may be exclusively decided by the manager").[5] It can therefore be presumed, at least at this early stage of the proceedings, that the non-managing members of the three LLCs were "passive" investors. *See Shirley v. JED Capital, LLC*, --- F. Supp. 2d ----, 2010 WL 2721855, at *2-4 (N.D. Ill. July 8, 2010) (holding that membership interest in LLC was "investment contract" where plaintiff was passive rather than managing member).[6] Thus, the SEC has sufficiently pled the existence of a "security" within the meaning of the Securities and Exchange Acts.

## IV. CONCLUSION

For the foregoing reasons, Falor's motion to dismiss is denied.

ENTER:  /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 19, 2010

---

[5] Tides Hotel Investors and South Beach Investors are Delaware LLCs, while Printers Row Investors is an Illinois LLC. (*See* Compl. ¶¶ 13, 31, 48.)

[6] The only case cited by Falor in support of his argument, *Robinson v. Glynn*, 349 F.3d 166 (4th Cir. 2003), is easily distinguishable from the instant action. (*See* Mot. at 7.) In *Robinson*, the court found that the plaintiff "was no passive investor heavily dependent on the efforts of others;" rather, the plaintiff "resided on the board of managers . . . and was . . . the board's vice chairman," as well as a member of the executive committee. *Robinson*, 349 F.3d at 170-71. In the case *sub judice*, Falor was allegedly the managing member of the three LLCs, while the other investors in his hotel conversion projects were largely passive. (*See* Compl. ¶¶ 1-2, 13, 31-32, 48-49.)

9