UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | Case No. 1:09-CV-5644 |
| Plaintiff, ) | |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | |
| ROBERT D. FALOR, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| JENNIFER L. FALOR, ) | |
| ) | |
| Relief Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Securities and Exchange Commission (the "SEC"), brought this action against Defendant Robert Falor ("Robert"), seeking injunctive relief, civil penalties, disgorgement, and prejudgment interest for alleged violations of the Securities Act, 15 U.S.C. § 77 et seq., and the Securities Exchange Act, 15 U.S.C. § 78(a) et seq. (Compl., Doc. No. 1.) This matter comes before the court on Marie Falor's ("Marie") Motion for Leave to Intervene as Judgment Creditor.

### I. BACKGROUND

The SEC alleges that Robert ran a multi-million dollar investment fraud scheme which defrauded approximately 55 investors of approximately $9 million. (SEC Compl. ¶ 1.) *See also SEC v. Falor*, No. 1:09-CV-5644, 2010 WL 3385510 (N.D. Ill. Aug. 19, 2010) (denying motion to dismiss). In its complaint, the SEC also named Jennifer Falor ("Jennifer") as Relief

Defendant,[1] seeking disgorgement of money she received from the alleged fraud of Robert. (SEC Compl. ¶¶ 75-79.) Because of a $52,404,066.54 New York state court judgment against Jennifer, won by Hotel 71 Mezz Lender, LLC ("Hotel 71"),[2] Jennifer filed a motion for leave to deposit $500,000 with the Clerk of Court pursuant to Federal Rule of Civil Procedure 67(a). (Mot. for Leave to Deposit Funds, Doc. No. 11.) Jennifer anticipates a dispute between the SEC and Hotel 71 concerning priority in the funds. The court granted the motion. (October 15, 2009 Order, Doc. No. 16.)

Marie has moved to intervene as of right under Federal Rule of Civil Procedure 24(a)(2).[3] (*See generally* Mot. for Leave to Intervene as J. Creditor ("Mot. to Intervene"), Doc. No. 26.) Marie Falor's Complaint in Intervention alleges that a judgment against Robert that was entered in the Circuit Court of Cook County, Illinois for the amount of $3,600,000 on October 31, 2008 remains unsatisfied. (Compl. in Intervention ¶¶ 3, 5, Doc. No. 26-2.) This judgment was based upon findings of "conversion, actual fraud and defalcation" by Robert and The Falor Companies ("TFC") while acting in a fiduciary capacity (*Id.* ¶ 4); Marie was, and is, a shareholder of TFC. (Mot. to Intervene ¶ 2.) Marie Falor's Complaint in Intervention further alleges that Robert fraudulently transferred money to Jennifer. (*Id.* ¶¶ 11-12.) Marie contends that she has priority over the SEC to Robert's funds, or to any funds he transferred to Jennifer because Jennifer holds any such funds in a constructive trust for Marie. (*Id.* ¶¶ 9-12.)

The SEC, Robert, and Jennifer, all oppose Marie's Motion to Intervene.

---

[1]   Jennifer is the ex-wife of Robert.

[2]   Hotel 71 is not a party to this case.

[3]   Marie is the mother of Robert.

## II. STANDARD

In deciding a motion to intervene, the court must accept as true the non-conclusory allegations of the movant's motion and complaint. *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995). A motion to intervene as a matter of right "should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Id.* (quoting *Lake Investors Dev. Grp. v. Egidi Dev. Grp.,* 715 F.2d 1256, 1258 (7th Cir. 1983)).

## III. ANALYSIS

In three separate briefs, the parties opposing intervention argue that section 21(g) of the Securities Exchange Act "erects an 'impenetrable wall" that prohibits a private party from intervening in an SEC enforcement action, that Marie does not have a sufficient interest to intervene under Rule 24(a)(2), that Marie's complaint in intervention fails to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and that a constructive trust over Jennifer's assets cannot be shown because the funds are not traceable.

### A. Section 21(g) of the Securities Exchange Act

The SEC argues that section 21(g) of the Securities Exchange Act precludes a private party from intervening without SEC's consent.[4] (Pl.'s Resp. in Opp'n at 2.) Section 21(g) states:

> Notwithstanding the provisions of section 1407(a) of Title 28, or any other provision of law, no action for equitable relief instituted by the [SEC] pursuant to the securities laws shall be *consolidated* or *coordinated* with other actions not brought by the [SEC], even though such other actions may involve common questions of fact, unless such consolidation is consented to by the [SEC].

---

[4] The SEC declined to consent to Marie Falor's intervention because 1) intervention would lead to extraneous claims that would delay the SEC's claims against Robert Falor, 2) the money sought by Marie Falor "constitutes ill-gotten gains" stemming from Defendant's alleged securities fraud, and 3) allowing intervention would "open a Pandora's Box" as other creditor's of the Defendant will also move to intervene. (Pl.'s Mot. in Opp'n at 3.)

15 U.S.C. § 78u(g) (2006) (emphasis added). Because the statute does not specifically mention whether or not it pertains to intervention, courts have diverged in their interpretation of whether section 21(g) should be read as a complete bar to intervention without the SEC's consent. Two cases concluded that section 21(g) is a complete bar under the plain meaning of the statute. *See SEC v. Wozniak*, No. 92 C 4691, 1993 WL 34702, at *1 (N.D. Ill. Feb. 8 1993) (denying a motion to intervene because section 21(g) acts as an "impenetrable wall"); *SEC v. Homa*, No. 99 C 6895, 2000 WL 1468726, at *2 (N.D. Ill. Sept. 29, 2000) (stating that "the language of Section 21(g) is plain and unambiguous, and therefore it must be given effect," in denying a motion to intervene in an SEC enforcement action). To support their conclusion, these cases cite the Supreme Court's decision in *Parklane Hosiery Co. v. Shore*,[5] 439 U.S. 322, 332 n.17 (1979) and note that numerous courts have held that section 21(g) bars cross-claims, counter-claims, and third-party claims in SEC actions even though the statute itself does not specifically mention them. *See Homa*, 2000 WL 1468726, at *2.

Other courts, including the Court of Appeals for the Eighth Circuit, have interpreted section 21(g) more narrowly, allowing for intervention in certain circumstances. *See e.g.*, *SEC v. Flight Transp. Corp.*, 699 F.2d 943, 950-51 (8th Cir. 1983) (reversing the district court's denial of two motions to intervene because "the purpose of [21(g)] is simply to exempt [the SEC] from the compulsory consolidation and coordination provisions applicable to multidistrict litigation."); *SEC v. Hollinger Int'l, Inc.*, No. 04 C 0336, 2004 WL 422729, at *3 (N.D. Ill. March 2, 2004) (allowing for a parent corporation, as a majority shareholder, to intervene in an SEC enforcement

---

[5] In *Parklane Hosiery*, the Supreme Court permitted a class of stockholders to use offensive collateral estoppel to prevent the defendant corporation from re-litigating a finding that it issued materially false and misleading proxy statements. The same issue had previously been litigated in an enforcement action by the SEC against the same defendant. 439 U.S. at 323-24. One justification the Court gave for permitting estoppel was that "the respondent [the stockholder] probably could not have joined in the injunctive action brought by the SEC even had he so desired." *Id*. at 332. In a footnote citing section 21(g), the Court added that "[m]oreover, consolidation of a private action with one brought by the SEC without its consent is prohibited by statute." *Id.* at 332 n.17.

4

action against its subsidiary after finding that section 21(g) did not preclude intervention because the parent corporation "was simply attempting to protect its corporate voting rights"); *SEC v. Heartland Grp., Inc.*, No. 01 C 1984, 2003 WL 1089366 (N.D. Ill. March 11, 2003) (granting a motion to intervene despite section 21(g) because the intervenor was challenging the actions of the court-appointed receiver, not attempting to recover from the defendant); *SEC v. Kings Real Estate Inv. Trust*, 222 F.R.D. 660, 663-666 (D. Kan. 2004) (permitting intervention after concluding that section 21(g) "does not serve as an impenetrable wall to intervention"). Section 21(g) does not specifically mention intervention. *See Flight Transp.*, 699 F.2d at 950 ("[Section 21(g)] does not say that no one may intervene in an action brought by the SEC . . . [i]t does not mention Fed. R. Civ. P. 24, nor does Rule 24 contain any clause giving special privileges to the SEC."). Courts that have considered the legislative history of, and purpose behind, section 21(g), have concluded that Congress was "concerned that coordination and consolidation of private actions, particularly multidistrict litigation, would hamper enforcement of the federal securities laws because . . . separate, albeit related, issues might increase the need for extensive pretrial discovery." *Heartland Grp.*, 2003 WL 1089366, at \*2 (quoting *SEC v. Prudential Sec. Inc.*, 171 F.R.D. 1, 4 (D.D.C. 1997) (quotation marks and citations omitted)).

In two Northern District of Illinois cases, *Hollinger International* and *Heartland Group*, the courts concluded that section 21(g) was not meant to bar every intervention, but does preclude intervention when the "would-be intervenors attempt[] to recover from the very defendants the SEC [is] suing." *Hollinger Int'l*, 2004 WL 422729, at \*3 (quoting *Heartland Grp.*, 2003 WL 1089366, at \*3). The courts noted that where a party seeks damages from the same defendant as the SEC under a different legal or factual theory, the party, in essence, is trying to "consolidate" a separate claim with the SEC action; in those cases, section 21(g) should

act as a bar to intervention. *See Hollinger, Int'l*, 2004 WL 422729 at *3-*4; *see also Heartland Grp.*, 2003 WL 1089366 at *3; *SEC v. Benger*, No. 09 C 0676, 2010 WL 724416, at *6-*10 (N.D. Ill. Feb. 23, 2010) (examining the application of section 21(g) to Rule 24(a)(2), concluding that section 21(g) bars intervention when "would-be intervenors would be 'coordinating' or 'consolidating' their separate actions against the defendants with the SEC's enforcement action").[6]

The above discussion of the case law demonstrates the inaccuracy of Marie's contention that courts in this district "have uniformly granted the right to intervene" to similar parties. (Intervening Pl.'s Reply at 6-7.) However, the court need not decide the proper interpretation of section 21(g) or its potential application to Marie's Motion to Intervene, because it is clear that Marie fails to establish a right to intervene under the standards of Rule 24(a)(2).

**B. Intervention under Rule 24(a)(2)**

Under Federal Rule of Civil Procedure 24(a)(2), intervention as of right must be granted if the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).[7] The Seventh Circuit has established four criteria that moving parties must satisfy to intervene as of right: "(1) their motions to intervene were timely; (2) they possess an interest related to the subject matter of the . . . action; (3) disposition of the

---

[6] In *Benger*, decided after the parties briefed Marie's Motion to Intervene, the magistrate judge recommended the denial of the motion to intervene of the "soon-to-be ex-wife" of the defendant in an SEC enforcement action. *Benger*, 2010 WL 724416, at *10. The defendant's wife was attempting to intervene because she wanted to become aware of "any and all assets" which had been frozen because she might have a "marital interest in the frozen assets." *Id.* at *1. Distinguishing from the facts in *Heartland Group*, the Court found that the wife sought damages against the defendant and was therefore precluded from intervening by section 21(g). *Id.* at *9-*11.

[7] Marie Falor does not seek intervention under Rule 24(b) which provides for permissive intervention. The court does not consider whether intervention would be appropriate under that standard.

6

action threatens to impair that interest; and (4) the parties fail to represent adequately their interests." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (quoting *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003)). Failure to establish any of these elements is reason to deny intervention, *id.*, and the would-be-intervenor has the burden to establish all four of these elements, *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002).

Here, the parties are in agreement that the main issue in Marie's Motion to Intervene is whether or not she possesses an interest related to the subject matter of the SEC's action against Robert. (*See* Intervening Pl.'s Reply at 3.) The Seventh Circuit has held that a potential intervenor must have a "direct, significant legally protectable" interest. *Reich*, 64 F.3d at 322 (citations omitted) (holding that the determination of the employment status of the two potential intervenors' constituted an interest sufficient to intervene in a Fair Labor Standards Act case against their would-be employer). In *Flying J, Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009), the Seventh Circuit explored the kind of "interest" required to intervene in a federal lawsuit; the Court noted that "a mere 'economic interest' is not enough." *Flying J*, 578 F.3d at 571 (reversing the district court's denial of a motion intervene). The court explained that "the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit – *maybe you're a creditor of one of them* – does not entitle you to intervene in their suit." *Id.* (emphasis added) (citations omitted); *see also Reich*, 64 F.3d at 322-23 (distinguishing the would-be intervenor's case from a situation in which "a third party who has some outstanding monetary claim from one of the parties attempts to intervene to ensure that the outcome of the case preserves as much of its claim as possible"). The *Flying J* court also noted that the "interest" necessary for intervention requires that the intervenor "be someone whom the law on

which his claim is founded was intended to protect." *Flying J*, 578 F.3d at 572; *see also Thompson v. United States,* No. 08 C 1294, 2010 WL 2573884, at *2 (N.D. Ill. June 25, 2010) (finding that the holder of an unsatisfied judgment against the defendant in a drug conspiracy case did not establish the necessary requirements to intervene).

Cited by the Seventh Circuit in *Flying J*, the Ninth Circuit case, *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004), provides an in-depth discussion of when a judgment creditor's interest could be sufficient to allow for intervention as of right. *See Flying J*, 578 F.3d at 571. In *Alisal Water*, a judgment creditor of the defendant moved to intervene as of right in an environmental enforcement action that could have impaired the defendant's ability to pay the judgment creditor. 370 F.3d at 917. Determining that the judgment creditor did not have a sufficient interest to intervene, the Ninth Circuit stated that an "interest must be related to the underlying subject matter of the litigation." *Id.* at 920. The court held that a mere interest in the "prospective collectability of a debt" was "several degrees removed from the public health and environmental policies that are the backbone of this litigation." *Id.* Concerned about creating an "open invitation" for creditors of a defendant to intervene in any lawsuit where damages might be awarded, the court concluded that "an allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention." *Id.*

Similarly, in *Thompson v. United States*, a recent case in the Northern District of Illinois, Judge Bucklo denied a motion to intervene by the defendant's judgment creditor because the potential intervenor was only indirectly interested in the case. *Thompson*, 2010 WL 2573884, at *1. After the government seized approximately $320,000 from defendant Thompson and Thompson pled guilty on drug conspiracy charges, potential intervenor Midwest Partners moved to intervene on the basis that it had an unsatisfied judgment against Thompson. *Id.* Judge

8

Bucklo held that Midwest's interests did not satisfy Rule 24(a)(2) requirements for intervention because Midwest Partner's interests were only to "protect its ability to collect its debt" and it had no interests in the underlying legal issues or subject matter of the original dispute. *Id.* at *2-*3.

Marie's bare-bones Motion to Intervene asserts, without any legal citation, that Marie is a judgment creditor of Robert and Jennifer, that Marie has "a right to any funds that Jennifer Falor may deposit with this Court that resulted from transfers of corporate assets made by Robert Falor," and that her interest will be impaired if she is not permitted to intervene. (*See* Mot. to Intervene. ¶¶ 3-5.) In her reply brief, Marie cites only an unreported case from the Northern District of Illinois, *SEC v. Householder*, No. 02 C 4128, 2005 WL 281222 (N.D. Ill. Feb. 2, 2005), to support her claim that she has a direct interest in this action. (*See* Intervening Pl.'s Reply at 3-4.) In *Householder*, the court permitted a judgment creditor in an SEC enforcement action to intervene. *Householder*, 2005 WL 281222 at *3. However, the discussion of this issue in *Householder* is very brief and does address any of the contrary authority discussed above.[8]

Here, as in *Alisal Water* and *Thompson*, Marie does not meet the Seventh Circuit's sufficient interest requirement under Rule 24(a)(2) because her only interest in the case is as a judgment creditor looking to collect her debt. If Marie has a direct interest in the underlying SEC antifraud enforcement action against Robert and Jennifer, her Motion does not adequately

---

[8] The factual circumstances in *Householder* are also distinguishable from the facts here. In *Householder*, which involved an SEC enforcement action alleging that the defendant defrauded former client investors, the intervenor was one of the defrauded former clients of the defendant and had obtained a judgment against the defendant in United States Bankruptcy Court. 2005 WL 281222, at *1. The intervenor had previously filed a memorandum of judgment against the defendant's home. *Id.* After the court granted a temporary restraining order freezing all of the defendant's assets for future disgorgement to defendant's victims, the defendant and the SEC reached a settlement agreement allowing the defendant to sell his home, which he co-owned with his wife, with the proceeds to be paid as disgorgement. With court approval, the defendant's home was sold and the court required the defendant to deposit his share of the proceeds with the clerk of court "for the benefit of [the defendant]'s judgment creditors." *Id.* Only at this juncture did the court grant the motion to intervene. *See id.* Thus, unlike Marie, the *Householder* intervenor had a direct interest because she was a victim of the defendant's fraud that gave rise to the SEC's lawsuit, and the funds deposited with the clerk of court were being held for the explicit purpose of reimbursing the defendant's victims.

identify it for the court. Inadequately developed arguments that do not contain substantive legal authority are waived. *See United States v. Alden,* 527 F.3d 653, 664 (7th Cir. 2008) (citing *United States v. McLee,* 436 F.3d 751, 760 (7th Cir. 2006) ("Because it is not the obligation of this Court to research and construct the legal arguments available to parties, these arguments are waived and warrant no discussion.").

Marie suggests that the state court judgment gives her a constructive trust over Jennifer's assets. (Intervening Pl.'s Reply at 4.) Yet, Marie has cited no legal authority to support this assertion. Even accepting the assertion as true, Marie has provided no authority showing that a constructive trust over Jennifer's assets would permit Marie to intervene in this action.

Because Marie is seeking to intervene as a judgment creditor and does not identify any other interest in this action, her motion does not meet the requirements for intervention as of right under Rule 24(a)(2). The court need not discuss the additional arguments made by Jennifer and Robert in opposition to intervention.

## IV. Conclusion

For the foregoing reasons, Marie Falor's Motion for Leave to Intervene as Judgment Creditor is denied.

ENTER:                          /s/
                                   JOAN B. GOTTSCHALL
                                   United States District Judge

DATED: September 24, 2010